UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IFEANYICHUKWU ERIC ABAKPORO,

                     Petitioner

                     v.                     12 CR 340 (WHP)
                                             18 CV 842 (WHP

UNITED STATES OF AMERICA,          **AFFIDAVIT**

                     Defendant.
-----------------------------------------------------------x

Lee Ginsberg, an attorney at law, duly admitted to practice in the State of New York and in the federal courts for the Southern and Eastern Districts of New York under the penalties of perjury states the following:

1.     On or around June 27, 2012, undersigned counsel was retained by Ifeanyichukwu Eric Abakporo to represent him in United States v. Abakporo, et al., 12 CR 340; on June 27, 2012, undersigned counsel filed an Appearance of Counsel form indicating his appearance as Mr. Abakporo's attorney.

2.     Thereafter, undersigned counsel represented Mr. Abakporo during pre-trial proceedings, at trial and during the sentencing process. My associate, Nadjia Limani, assisted me with all stages of our representation of Mr. Abakporo.

3.     Subsequent to sentencing in this matter, Mr. Abakporo retained attorney Bob W. Ray for his appeal of the conviction and sentence in this matter in the Second Circuit Court of Appeals.

4.     As a result of Mr. Ray being retained, undersigned counsel withdrew from the representation of Mr. Abakporo.

1

## Background

5.      On January 30, 2018, Mr. Abakporo filed a Motion pursuant to 28 U.S.C. §2255 to vacate, set aside or correct judgment and sentence *pro se*, Abakporo v. U.S., 18 CV 842 (WHP), D.E. 1.  On the same date, he also filed a motion for an extension of time to file a declaration, Abakporo v. U.S.,18 CV 842 (WHP), D.E. 2.[1]

6.      On February 5, 2018, Mr. Abakporo filed the declaration of I. Eric Abakporo in Support of Motion to Vacate, Set Aside of Correct Sentence Purs. to 28:2255, Abakporo v. U.S.,18 CV 842 (WHP), D.E. 4.

7.      On August 17, 2018, Your Honor ordered that "IT IS HEREBY ORDERED that Counsel shall give sworn testimony, in the form of an affidavit, addressing the allegations of ineffective assistance of counsel made by movant; and it is further ORDERED that Petitioner execute and return to this court within 60 days from today's date the accompanying 'Attorney-Client Privilege Waiver (Informed Consent)' form." Abakporo v. U.S.,18 CV 842 (WHP), D.E. 9.

8.      On August 31, 2018, Mr. Abakporo filed a Supplemental Submission in Support of Abakporo's Motion to Vacate or Set Aside his Judgment of Conviction, Abakporo v. U.S.,18 CV 842 (WHP), D.E. 10.

9.      On October 9, 2018, Mr. Abakporo filed a letter regarding the Government's alleged delay in filing a response along with the executed Attorney-Client

---

[1] Because Mr. Abakporo is bringing this petition *pro se*, the term "filed" as it relates to his documents refers to the date the document was filed on ECF by the Clerk of the Court, although the actual date of the document and the date of the Clerk's receipt of the document may be earlier in time.

Privilege Waiver (Informed Consent), executed on July 10, 2018, <u>Abakporo v.</u>

<u>U.S.,</u>18 CV 842 (WHP), D.E. 12.

10.     On October 9, 2018, the Government submitted a letter to the Court providing a

status update indicating that undersigned counsel would be preparing this affidavit

and that the Government would be prepared to file its response shortly after

receipt of this affidavit, <u>Abakporo v. U.S.,</u>18 CV 842 (WHP), D.E. 13.

**<u>Ineffective Assistance of Counsel</u>**

11.     Petitioner asserts that undersigned counsel's commission of various errors and

omissions constitutes ineffective assistance of counsel.  <u>See</u>, <u>Abakporo v. U.S.,</u>18

CV 842, D.E. 4 and 10.

12.     The Government, by its letter dated October 9, 2018 to the Court, <u>Abakporo v.</u>

<u>U.S.,</u>18 CV 842, D.E. 13, has requested that undersigned counsel specifically

respond to these three allegations:[2]

    a.   agreed to call an expert witness on banking and failed to do so (Abakporo

         Decl. at 25, 36);

    b.   failed to investigate or call as witnesses certain individuals that, Abakporo

         contends, would have provided exculpatory testimony (<i>id</i>. at 34-35); and

    c.   failed to adequately research New York law regarding powers of attorney and

         failed to raise arguments suggested by Abakporo and purportedly agreed to by

         counsel. (<i>Id</i>. at 36-39).

_____

[2] "The Government believes that these are the only factual issues raised in Abakporo's petition where testimony from counsel would assist the Court in its decision, and that the remainder of his claims of ineffective assistance can be readily addressed based solely on the trial and appellate record." <u>Government Letter to the Court</u>, dated October 9, 2018, <u>Abakporo v. U.S.,</u>18 CV 842, D.E. 13.

**Failure to Call Expert Witness**

13.     Petitioner claims that he and undersigned counsel "agreed that an expert witness will be needed to clarify the issues relative to WAMU, F.A. and WAMU.  The expert was to testify that the FDIC for WAMU cannot and is not acceptable to prove that WAMU, F.A. is FDIC insured.  Our agreed strategy was to counter whatever the Government's expert will say.  Up to the day of the trial, Movant was hopeful from his discussions with Mr. Ginsberg that they shall have the banking expert at the trial.  It was after Movant testified that it became clear to him that Mr. Ginsberg did not make any arrangement for the expert witness they had hoped to call."  Abakporo v. U.S.,18 CV 842, D.E. 4, 26.[3]

14.     Prior to the commencement of trial, we had discussed the possibility of retaining an expert and agreed with Mr. Abakporo that the better course strategically would be to cross-examine the witnesses called by the Government on the issues related to the lending institutions.

15.     During the course of the trial, undersigned counsel cross-examined the following Government witnesses on subjects relating to the lending institutions:

a.   Irma Valdez, Fremont Investment & Loan,[4] Senior Investigation Research Specialist;

b.   Michelle Hood, Option One Mortgage,[5] Senior Paralegal, Legal Department;

---

[3] For the purposes of this affidavit, undersigned counsel cites to the page number in the ECF header and not on the bottom of the page.

[4] Ms. Valdez was currently employed by Signature Group Holdings, which had previously acquired Fremont Investment and Loan

[5] Ms. Hood was currently employed by Aerotech and contracted out to Sand Canyon Corporation, formerly known as Option One Mortgage.

      c.   Peter Vogl, Washington Mutual Bank,[6] Loan Processor and Commercial Loan/Mortgage Underwriter;

      d.   Rodney Watson, Federal Deposit Insurance Corporation, Bank Examiner.

16.     However, on July 19, 2013, the ninth day of trial, Mr. Abakporo forwarded an e-mail from Anne Farrar at Thompson Reuters to my associate, Nadjia Limani. Attached to this e-mail was an Expert Finder Report on bank regulation experts in New York.  See, Exhibit A, E-mail from Eric Abakporo to Nadjia Limani dated 7/19/13.  This was Mr. Abakporo's only attempt at locating a bank regulation expert and ultimately, we agreed that the better course would be to rely on the cross-examination of the Government's witnesses on the subjects related to the lending institutions.

**Failure to Call Fact Witnesses**

17.     Petitioner claims that "[a]t my meeting with Mr. Ginsberg after the filing of the Second Superseding Indictment, Movant informed him that the borrowers of FIL loans (Ijaola and Megafu) and the borrowers of the Long Beach loan (Gbenebitse) who the Government referred to as straw buyers, were ready and willing to come to testify that, they were not straw buyers.  They were also ready to testify that my relationship with them was that of family lawyer or as in the case of Omowomi Ijaola, her pastor, realtor and lawyer.  Mr. Ginsberg made absolutely no contact with any of these witnesses, even when Movant gave him their name, their phone number and home addresses….Therefore, it is not controvertible that counsel's

---

[6] Mr. Vogl was currently employed by JP Morgan Chase, which had previously acquired Washington Mutual Bank.

failure to meet or contact these very important witnesses amounts to ineffective assistance of counsel." Abakporo v. U.S.,18 CV 842, D.E. 4, 35-36.

18. Based on our discussions with Mr. Abakporo, on July 2, 2013, we prepared subpoenas to testify at trial for the following potential defense witnesses: Omatie Gbenebitse, Thomas Harrison, Kerry Killinger, Omowumi Kolawole (Ijaola), Francis Megafu, Stephen J. Rotella, Victor Udensi and Murray Zoota. See, Exhibit B, Subpoenas to Testify at a Hearing or Trial in a Criminal Case.

19. In addition, on July 1, 2013, we sent an e-mail to Jim Reilly, Judge Scheindlin's law clerk, updating the Government's "List of People and Places" with Mr. Abakporo's additions. The Government's list included Omatie Gbenebitse, Thomas Harrison, Omowumi Kolawole (Ijaola), Francis Megafu, Stephen Rotella and Victor Udensi. See, Exhibit C, E-mail from Nadjia Limani to Jim Reily dated 7/1/13.

20. Accordingly, Mr. Abakporo's claims that undersigned counsel did not plan on calling the referenced fact witnesses is unfounded. They were included on the List of People and Places read to the jury and we drafted subpoenas for their testimony.

21. However, after our review of 3500 material and analysis of trial testimony, it was ultimately decided that is was not to Mr. Abakporo's benefit to call Omowumi Kolawole (Ijaola), Francis Megafu and Omatie Gbenebitse as their potential testimony on would be damaging to the defense.

22. For example, in an interview of Mr. Gbenebitse provided as 3500 material, he stated to the Government that he "never gave Eric permission to use his name or

identity," "never gave [LaTanya Pierce] permission to be his attorney" and "never gave power of atty to anyone."  See, Exhibit D, Notes of Interview of Omatie Gbenebitse dated 1/6/13.  Further, he confirmed his signature on closing documents but stated that he never purchased the properties in question.

**Failure to Adequately Research New York Law Regarding Powers of Attorney and Failure to Raise Arguments Suggested by Abakporo**

23.     Petitioner asserts that "[c]ounsel failed to research the GOLA 5-1501 which Movant and him had discussed nearly two weeks before it came up in open court" and "[c]ounsel failed to object when the judge contradicted Movant testimony where Movant cited the only statute governing the subject of transfer of a power of attorney to third parties.  If Mr. Ginsberg had made a little research he would found that the New York Court of Appeals had approved Movant interpretation of the provision of the power of attorney statute GOL chapter 5."  Abakporo v. U.S.,18 CV 842, D.E. 4, 38.

24.     During Mr. Abakporo's direct examination, he was asked by undersigned counsel "[w]ithout giving us the whole history of general obligations law, does it authorize you to act as power of attorney on behalf of someone else?"[7]

25.     He responded as follows: "It does two things. It not only gives me, if you don't know the one who can give me the power. You can give me the power which you sign by yourself. But look at the beauty of that law. You can also call me on the phone if I know you and you give me authorization to give power on your behalf.

---

[7] United States v. Abakporo, 12 CR 340, Trial Transcript, 1628:24-1629:1.

This is what the majority of people don't know and that's why I think that they think everything is wrong."[8]

26.     Clearly, this was Mr. Abakporo's interpretation of the General Obligations statute at the time of the charged offenses.

27.     On July 25, 2013, while deliberating, the jury sent a note to the Court including the following question: "can we get clarification on law/rules under which power of attorney can be transferred to third parties?"[9]

28.     After careful consideration and research, undersigned counsel responded as follows to the Court's inquiry regarding the jury's question:

> Both sides, I believe, I speak for our side first, don't think there should be an additional instruction as to the power of attorney law. A, because the case that we cited talks about the danger of giving an additional charge that was not addressed initially on summation. But B, because the power of attorney law, the general obligations law, is not all that clear. And there is no one clear, obvious definition. And it would just create a problem and confusion.... It is not really clear because there is a whole separate section on real estate transactions, power of attorneys, and what you can and can't do. It's not that clear.[10]

29.     Judge Scheindlin instructed the jury in response to their note as follows:

> Let me finish your first note, where you asked if you could get clarification of law/rules under which power of attorneys can be transferred to third parties. After a good deal of research and conversation with the attorneys, the answer is we can't give you an answer. We are limited to the trial record as it stands. I can't supplement the record. The record is now closed. If there was one law or statute I could read you, I would. But there isn't. So New York law is complicated, because it goes this way and that way, it's unclear. There is no way I can do it. That would be testifying, and I can't do that. I'm afraid we can't give you an answer. The record is what the record is, best I can say.[11]

---

[8] United States v. Abakporo, 12 CR 340, Trial Transcript, 1629:2-8.
[9] United States v. Abakporo, 12 CR 340, Trial Transcript, 2186:15-16.
[10] United States v. Abakporo, 12 CR 340, Trial Transcript, 2199:18 – 2200:2 and 2200:12-14.
[11] United States v. Abakporo, 12 CR 340, Trial Transcript, 2201:19-2202:6.

30.   Accordingly, Petitioner's assertions that undersigned counsel did not the research the law regarding the transfer of a power of attorney and failed to object to the Court's instruction on the subject are misplaced.  When confronted with the jury's notes, undersigned counsel researched the state of the law and unfortunately there was no clear answer.  As an officer of the Court, I was required to disclose the results of my research to Judge Scheindlin, despite Mr. Abakporo's interpretation of the General Obligations Law.

31.   Further, in the case cited by Petitioner as support for his interpretation of the General Obligations Law, People v. Ippolito, 20 N.Y. 3d 615 (2013), the defendant's conviction for forgery was reversed because he had a direct power of attorney from his client.  There was no transfer of that power of attorney to another person as was the case with certain transactions at issue in Mr. Abakporo's case.

Lee Alan Ginsberg

Dated: November 9, 2018
         New York, NY

9